1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   PETER TUCKER,                          No.  2:18-cv-00528-MCE-CKD

12              Plaintiff,

13        v.                                 **MEMORANDUM AND ORDER**

14   CYSTIC FIBROSIS FOUNDATION,

15              Defendant.

16   _____

17   CYSTIC FIBROSIS FOUNDATION,

18              Cross-Complainant,

19        v.

20   PETER TUCKER,

21              Cross-Defendant.

22

23        Through the present action, Plaintiff Peter Tucker ("Plaintiff" or "Tucker") seeks

24   damages from his former employer, Defendant Cystic Fibrosis Foundation ("Defendant"

25   or "CFF") after he was terminated by CFF in 2017.  Plaintiff's Complaint includes three

26   different causes of action, for age discrimination in violation of California's Fair

27   Employment and Housing Act ("FEHA"), Cal. Govt. Code §§ 12940, et seq., wrongful

28   termination premised on the alleged FEHA violation, and for defamation under California

                                         1

1  law given statements that were purportedly made by other CFF personnel about Plaintiff

2  and the circumstances following his termination.

3    This case was initiated in state court, after which Defendant removed it to this

4  Court, citing diversity jurisdiction under 28 U.S.C. § 1332.  Now before the Court is

5  Defendant's Motion for Summary Judgment, or alternatively for summary adjudication of

6  issues brought pursuant to Federal Rule of Civil Procedure 56.[1]  According to Defendant,

7  Plaintiff cannot establish a viable claim for age discrimination and, as a consequence,

8  his derivative wrongful termination claim fails as well.  Finally, Defendant alleges that

9  Plaintiff's defamation cause of action is also fatally flawed because the statements in

10  question were privileged as internal communications regarding a matter of common

11  interest and were true in any event.  As set forth below, Defendant's Motion is

12  GRANTED.[2]

13

14  **BACKGROUND**

15

16    After previously working for CFF's Sacramento Chapter between 2000 and 2005,

17  Plaintiff was rehired in 2010 as the Chapter's Senior Development Director.  In 2012, he

18  received a promotion to Executive Director and remained in that position until he was

19  terminated on December 13, 2016.  It appears that Plaintiff performed successfully as an

20  Executive Director and was the subject of no disciplinary proceedings until late 2016,

21  when certain discrepancies were noted during the course of an office audit handled by

22  CFF's Senior Internal Auditor, Brian Presley.

23    **A.**  **Crow Canyon Country Club Event**

24    In the course of Presley's October 18, 2016, visit to the Sacramento office in

25  conjunction with the audit, he questioned Plaintiff about the coding of certain revenue

26     [1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless
otherwise noted.

27

28     [2] Having determined that oral argument would not be of material assistance, the Court ordered this
matter submitted on the briefs in accordance with E.D. Local Rule 230(g).

1   received during a third-party fundraising event held at the Crow Canyon Country Club

2   and organized by a CFF volunteer, JoAnne Williams.  Plaintiff told Presley that Williams

3   had asked that the proceeds from the event be used to support the Sacramento

4   Chapter's 2017 "Unmask the Cure" event, but Plaintiff was unable to locate the letter he

5   claimed Williams had sent in making that request.

6        About a month later, on November 14, 2016, Plaintiff sent Presley an email

7   attaching "the request[ed] letter that I had received from the event organizer, JoAnne

8   Williams, late last year."  CFF's Exhibits in Support of Mot for Summ J., ECF No. 12-8

9   ("Def.'s Exs.), Ex. 12.  The letter, however, was unsigned and dated two months before

10  the event proceeds were known to have been received.  Further investigation revealed

11  that the document had been created less than four minutes before Plaintiff sent the

12  email to which it was attached.  Decl. of Brian Presley, ECF No. 12-5, ¶ 7.

13       During a follow-up call three days later with Presley and two members of CFF's

14  audit department, Ashleigh Duce and Eleana Seek, Plaintiff was further questioned

15  about the circumstances in which the letter he had forwarded to Presley had been

16  received.  According to Presley, Plaintiff repeatedly indicated that the letter had been

17  received in the mail and that he had simply scanned and attached it to his November 18,

18  2016 email.  Id. at ¶ 8.  When confronted with the fact that the document's properties

19  showed that it had been created only recently, Plaintiff changed his story, indicating that

20  he created the letter using Microsoft Word based on a verbal conversation with

21  Ms. Williams.  Id. at ¶ 9.  Then, about forty-five minutes later, Plaintiff emailed a signed

22  copy of the letter in question, stating that "attached is the signed letter from JoAnne

23  Williams that we discussed and that I knew I had received via the mail as I recalled."  Id.

24  at ¶ 9. Ultimately, when CFF's IT Department examined the letter, it determined the

25  document had not been generated until January of 2016, several months after it was

26  dated and about the time the funds for the Crow Canyon Event were received.  See

27  Def.'s Ex. 14.

28  ///

1

### B. The Ladies' Tea Event

2  During his initial October 18, 2016, in-office audit visit already discussed above,

3 Brian Presley also asked Plaintiff about another event from which the Sacramento

4 Chapter had received proceeds.  JoAnne Williams, the same volunteer responsible for

5 the Crow Canyon Country Club event discussed above, also hosted a "Ladies-Tea

6 Event" to raise awareness of cystic fibrosis and to encourage donations.  The Chapter

7 had received 72 checks from the event, all in unique amounts.  When asked about why

8 the amounts were different, Plaintiff told Presley that the odd amounts were meant as a

9 "joke" by the attendees and were not related to any purchases that were made.  Presley

10 Decl., ¶ 12.  When Presley later reviewed the checks themselves, however, he

11 discovered that several referred to a "craft fair" and a "boutique event".  Id. at ¶ 13.

12 When Presley asked Plaintiff again about the event during his follow-up telephone call

13 with Ms. Duce and Ms. Seek, Plaintiff admitted that the information he provided during

14 his initial meeting with Presley was inaccurate, and that in fact, many of the checks were

15 used to purchase donated merchandise at the event, including "ornaments, necklaces

16 and other crafts."  Id. at ¶ 14.  CFF alleges that Plaintiff tried to conceal the nature of the

17 donations at the Ladies' Tea Event because to the extent physical items were

18 purchased, a fair market value must be assigned to each item in order to properly

19 account the donation for tax purposes.  See Def.'s Opening Mem., n.2, 13:27-28.

20

### C. 2016 Sacramento Great Strides Auction

21  Brian Presley also brought up a third concern during the course of his initial in-

22 office audit visit on October 18, 2016, concerning certain items sold by the Sacramento

23 Chapter at yet another CFF fundraiser, the 2016 Sacramento Great Strides Auction.

24 When Plaintiff was unable to provide a list of the items sold at that time, Presley followed

25 up with an email on October 25, 2016, reiterating his request for the auction list.  Plaintiff

26 emailed a list three days later.

27  In the course of discovery, CFF claims it discovered that information provided by

28 Plaintiff concerning the items sold was intentionally inaccurate.  An email string between

1   Plaintiff and CFF Field Operations Supervisor Damon Tennyson discussed how Plaintiff

2   should respond to the auditor, with Plaintiff suggesting he planned to not disclose two

3   items sold at the auction, a pre-lit Christmas tree and group guitar lessons.  See Def.'s

4   Ex. 5.  Plaintiff admitted at deposition that Tennyson had told him, in response, to

5   disclose everything to the auditors, even if there were documentation or other issues.

6   Pl.'s Dep., 50:22-25.[3]  Plaintiff nonetheless failed to include either the Christmas tree or

7   the guitar lessons on the list provided to the auditors, thereby concealing the sale of

8   those items from them.  Def.'s Ex. 6.  In addition, when questions were raised by the

9   auditor as to whether three other items listed as "donor not claimed" had in fact been

10  sold, Plaintiff's email to Tennyson conceded that two of the items had been sold.  Id.

11  at 8.  Plaintiff's subsequent email to the auditor on October 31, 2016 nonetheless

12  indicated that the "[t]wo items were not paid for nor picked up leaving only the one

13  tangible item needing sales tax to be paid."  Id. at 9 (emphasis added).  Plaintiff admitted

14  at deposition that, to the extent this was untrue, it was violation of CFF policy to provide

15  the auditor with inaccurate information.  Pl.'s Dep., 67:21-24.

16           **D.    The Internal Audit Report and Plaintiff's Response**

17           After completing its investigation, CFF's Internal Audit Group circulated a draft

18  report (the "Report") raising serious questions about representations made by Plaintiff

19  during the course of the audit, concluding, with respect to the above-enumerated

20  circumstances, that "there were at least two instances where the Executive Director

21  provided false or misleading information to the auditor."  Report, Def.'s  Ex. 1, p. 3,  ¶ 3.

22  Plaintiff responded to the Report by sending an email to his immediate supervisor, Anne

23  Harris (CFF's Director of Field Management), on December 4, 2016.  Def's Ex. 18.  He

24  stated he was caught off guard and "startled" by the auditors' request for information

25  concerning events that had occurred, in some cases, as much as a year beforehand.

26  Plaintiff also attributed some of the discrepancies concerning JoAnne Williams' letter to

27  _____

28           [3] Complete copies of Plaintiff's deposition transcripts were lodged with the Court by both sides in connection with their briefing on the instant Motion.

1   clerical error.  He further claimed that after his initial meeting with Brian Presley on

2   October 18, 2016, he contacted Ms. Williams, who helped jog his memory about the

3   nature of the Ladies' Tea Event and the items that were sold.  Id. at p. 5.

4           **E.     Plaintiff's Termination**

5           On December 5, 2016, CFF placed Plaintiff on leave pending the results of its

6   investigation.  Plaintiff asked to provide additional information and did so by a

7   December 11, 2016, email to Glen Goldmark, CFF's Senior Vice President of Human

8   Resources.  In that email, Plaintiff reiterated much of the same information he had

9   already offered during the course of the audit and his subsequent email to Anne Harris

10  discussed above.  Def.'s Ex. 19.

11          On December 13, 2016, CFF notified Plaintiff by letter from Ms. Harris that it was

12  terminating his employment on grounds that CFF had "lost confidence" in Plaintiff's

13  ability to lead the Sacramento chapter given the "changing information" he provided to

14  the auditors.  Pl.'s Appendix of Exhibits, ECF No. 15-2 (Pl.'s Exs.), Ex. 11.  According to

15  CFF, it was Marc Ginsky, Defendant's Executive Vice President and Chief Operating

16  Officer ("COO"), who actually made the decision to discharge Plaintiff.  Ginsky Decl.,

17  ECF No. 12-7, ¶¶ 4-5.

18          **F.     Defendant's Post-Termination Statements**

19          Following his termination, Plaintiff asked Anne Harris to provide a further

20  explanation as to why CFF had ended his employment.  Ms. Harris, in turn, sent an

21  email to other management personnel asking for their input on how she should reply,

22  stating that "[m]ay I respond to him explaining that he lied during the audit process and

23  his story changed, and as a result we lost trust and confidence."  Def.'s Ex. 22.  Plaintiff

24  claims this statement was defamatory.

25          CFF's staff also were faced with inquiries from the public as to why Plaintiff had

26  been terminated, perhaps in response to information Plaintiff himself provided about the

27  circumstances surrounding his discharge.  During emails that ensued as to both that

28  issue and Plaintiff's own inquiry mentioned above, Eleana Seek, CFF's Chief Audit and

6

1   Compliance Officer, wrote Marc Ginsky, Defendant's COO, stating, in pertinent part, that

2   "[P]laintiff made up stories and changed them on multiple occasions."  She added that

3   had Plaintiff "been truthful from the start when we followed up with him, termination could

4   have been avoided."  Def.'s Ex. 21.  Ginsky concurred with that assessment in another

5   email, suggesting that "nothing we have received changes the underlying fact that he

6   made up a story and changed it."  Id.  Plaintiff alleges he was defamed by those

7   statements.

8        Finally, in the initial session of Plaintiff's deposition he claimed that his

9   replacement as Executive Director for the Sacramento Chapter, Cole Jacobson, told him

10  that he had been told by "someone in management" that he was terminated for

11  "misappropriating funds."  Pl.'s Dep., 186:18-187:5.  At the second session of Plaintiff's

12  deposition, however, his testimony changed when Plaintiff stated that he was terminated

13  for "lying during the audit" and claimed that it in fact was Marc Ginsky who conveyed that

14  information to Jacobson.  Pl.'s Dep., 330:25-331:25; 340:17-341:14.  Plaintiff alleges that

15  Ginsky defamed him by making that statement.  Ginsky, for his part, does not recollect

16  having made the statement but claims that any information he did convey to Jacobson

17  concerning Plaintiff's departure was only for purposes of helping Jacobson deal with any

18  community backlash as a result of Plaintiff's termination, and in order to impress on

19  Jacobson the importance of strict financial compliance.  Ginsky Decl., ¶ 8.

20

21                              **STANDARD**

22

23       The Federal Rules of Civil Procedure provide for summary judgment when "the

24  movant shows that there is no genuine dispute as to any material fact and the movant is

25  entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v.

26  Catrett, 477 U.S. 317, 322 (1986).  One of the principal purposes of Rule 56 is to

27  dispose of factually unsupported claims or defenses.  Celotex, 477 U.S. at 325.

28  ///

                                    7

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment.  See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995).  The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment.  See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323.  If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).  The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is

1   such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>,

2   477 U.S. at 248.  In other words, the judge needs to answer the preliminary question

3   before the evidence is left to the jury of "not whether there is literally no evidence, but

4   whether there is any upon which a jury could properly proceed to find a verdict for the

5   party producing it, upon whom the <u>onus</u> of proof is imposed." <u>Anderson</u>, 477 U.S. at 251

6   (quoting <u>Improvement Co. v. Munson</u>, 81 U.S. 442, 448 (1871)) (emphasis in original).

7   As the Supreme Court explained, "[w]hen the moving party has carried its burden under

8   Rule [56(a)], its opponent must do more than simply show that there is some

9   metaphysical doubt as to the material facts." <u>Matsushita</u>, 475 U.S. at 586.  Therefore,

10   "[w]here the record taken as a whole could not lead a rational trier of fact to find for the

11   nonmoving party, there is no 'genuine issue for trial.'" <u>Id.</u> at 587.

12       In resolving a summary judgment motion, the evidence of the opposing party is to

13   be believed, and all reasonable inferences that may be drawn from the facts placed

14   before the court must be drawn in favor of the opposing party.  <u>Anderson</u>, 477 U.S. at

15   255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

16   obligation to produce a factual predicate from which the inference may be drawn.

17   <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>,

18   810 F.2d 898 (9th Cir. 1987).

19

20                               **ANALYSIS**

21

22   **A.       Second Cause of Action:  Age Discrimination under FEHA**

23       FEHA prohibits an employer from terminating an employee for various reasons,

24   including the employee's age.  Cal. Gov. Code § 12940(a).  As Defendant points out,

25   age discrimination can be established either by direct or circumstantial evidence.  Here,

26   Plaintiff points to no direct evidence suggesting that he was terminated because of his

27   age.  No comments made by any of CFF's management team who decided to terminate

28   Plaintiff, for example, have been identified.

9

1      In order to establish age discrimination claim circumstantially, both California and

2   federal courts utilize the so-called <u>McDonnell-Douglas</u> burden shifting framework to

3   determine whether a viable claim has been presented.  <u>Guz v. Bechtel Nat'l Ins.,</u>

4   24 Cal. 4th 317, 359 (2000).  Under that framework, the initial burden of establishing a

5   prima facie case of age discrimination rests with the plaintiff.  To satisfy that burden, the

6   plaintiff must demonstrate that he was: (1) a member of the protected class (at least age

7   40); (2) performing his job satisfactorily; (3) subject to an adverse employment action;

8   and (4) replaced by a substantially younger employee.  <u>Coleman v. Quaker Oats Co.</u>,

9   232 F.3d 1271, 1281 (9th Cir. 2000).  If Plaintiff establishes these elements, then the

10  burden shifts to the employer, here CFF, to articulate a legitimate nondiscriminatory

11  reason for its employment decision.  <u>Id.</u>  Then, if CFF is successful in doing so, the

12  burden shifts again to Plaintiff to show that Defendant's reason is a pretext for a

13  discriminatory motive.  <u>Id.</u>  Evidence too weak to support a rational inference of

14  discriminatory intent cannot support a finding of discrimination or prevent summary

15  judgment for CFF.  <u>Guz v. Bechtel</u>, 24 Cal. 4th at 369-70.

16     In Plaintiff's case, it is undisputed that he was over 40 years old   Defendant

17  nonetheless claims he cannot make a prima facie case of discrimination because

18  Plaintiff, having provided the CFF internal auditors false and/or misleading information

19  prior to his termination, was not performing his job in a satisfactory manner.  Plaintiff told

20  Brian Presley that he was attaching a copy of the letter he received from JoAnne

21  Williams concerning the Crow Canyon Country club event, rather than a Word version he

22  created on his own computer.  Moreover, when repeatedly questioned about how he had

23  received the letter he emailed to the auditors, Plaintiff continued to insist that he had

24  received it in the mail.  Additionally, while Plaintiff ultimately told the auditors he had

25  emailed the draft letter for Ms. Williams to sign in November of 2015, Plaintiff never

26  provided any such emails and a search of Plaintiff's computer failed to show that any

27  were sent.  Finally, when CFF had its IT Department examine the letter, it found that the

28  letter had not been created until approximately January of 2016, several months later

1   and at about the time the funds in question were received.  Def.'s Ex. 14.  Even Plaintiff

2   admitted that he had provided misleading information to the auditors concerning

3   Ms. Williams' donor letter.  Pl.'s Dep., 136:17-139:4.

4        On another topic, as detailed above, Plaintiff failed to disclose that physical items

5   had been purchased at the Ladies' Tea event, and while he initially claimed to have

6   forgotten the details, Plaintiff failed to update the auditors even after a telephone

7   conversation with Ms. Williams in October of 2016 "jogged" his memory.

8        Finally, at yet another event, the 2016 Sacramento Great Strides Auction, Plaintiff

9   failed to disclose that several items had sold when, as evidenced by his email to Damon

10  Tennyson described above, he knew that they had been.  He nonetheless persisted in

11  telling the auditors otherwise even after being advised by Tennyson that he needed to

12  make a full disclosure to the auditors.

13       Particularly when considered together, these collective lapses were of legitimate

14  concern to CFF.  As CFF's Motion points out, donations are the lifeblood of any non-

15  profit charitable organization and audits ensuring that such donations are properly

16  handled are of paramount importance since the discovery of mishandled donations can

17  lead to potentially crippling tax audit consequences.  As CFF's Chief Audit and

18  Compliance Officer attests, "financial transparency and donor confidence in the financial

19  integrity of non-profits are critical to their continued existence."  Decl. of Eleana Seek,

20  ECF No. 12-6, ¶ 2.

21       The numerous inconsistencies raised by the evolving explanations Plaintiff

22  provided during the audit cannot be discounted, and certainly implicate whether Plaintiff

23  was performing adequately at the time he was terminated for purposes of making a

24  prima facia claim of age discrimination.

25       Even if we assume that Plaintiff has satisfied his burden in making a prima facie

26  case such that the burden shifts to Defendant to provide a legitimate, non-discriminatory

27  reason for his termination, the result does not change since, given the circumstances

28  described above, the Court believes that CFF has satisfied its burden in demonstrating

1   non-discriminatory reasons why it discharged Plaintiff.  Marc Ginsky, Defendant's COO,

2   made the actual termination decision based on the findings in the Audit Report

3   concluding that Plaintiff had provided false and misleading information during the course

4   of the Sacramento Chapter's 2016 Audit.  Ginsky concluded that "the findings in the

5   Audit Report were too egregious to allow Plaintiff to continue overseeing the Sacramento

6   Chapter," particularly given the fact that Ginsky had emphasized since assuming his

7   position earlier in 2016 "the need for strict financial compliance" and a lack of tolerance

8   for "anything less than complete financial transparency in the operation of our local

9   Chapters."  Ginsky Decl., ¶¶ 4-5.  Perhaps even more significantly, as Anne Harris'

10  termination letter attests, Plaintiff's shifting explanations during the audit caused CFF

11  management to lose confidence in his ability to lead the Sacramento Chapter.  Pl.'s

12  Ex. 1, Seek Decl., ¶ 9.

13       While Plaintiff claims that CFF's investigation was inadequate because, for

14  example, it failed to contact JoAnne Williams to confirm that her donor intent was indeed

15  as stated in the November 2015 letter, as CFF points out the issue became not

16  Ms. Williams' intent but rather its trust in Plaintiff's leadership as a result of the

17  misleading and/or inaccurate information he provided.  Additionally, although Plaintiff

18  takes issue with CFF's failure to provide the progressive discipline it normally utilizes in

19  addressing employee shortcomings, CFF felt that the gravity of the situation, involving as

20  it did an Executive Director who its auditors had concluded provided false and

21  misleading information, warranted immediate termination.  Even Plaintiff admits that

22  there are instances of misconduct where immediate termination is indicated in

23  accordance with CFF's policy and procedure.  Pl.'s Ex. 1, Aff. of Peter Tucker, ¶ 3.

24       Because the Court concludes, for all the above reasons, that CFF has met its

25  burden in showing it had legitimate reasons for terminating Plaintiff, the burden once

26  again shifts to Plaintiff to demonstrate that those reasons were merely pretextual and

27  that CFF's real motivation in terminating Plaintiff rests with his age.  Plaintiff offers two

28  arguments in that regard.  First, he claims he was replaced by Cole Jacobson, a

1   younger, less experienced employee.  Second, Plaintiff argues that "he was terminated

2   under extremely suspicious circumstances, raising an issue of pretext."  Pl.'s Opp. 9;

3   16-17.

4        Having considered all the evidence, the Court does not believe that the

5   circumstances surrounding Plaintiff's termination give rise to an inference of

6   discrimination so as to suggest that CFF's rationale for terminating Plaintiff was

7   pretextual.  CFF has articulated legitimate reasons for acting as it did.  While Plaintiff

8   argues that he had received favorable performance evaluations during the entirety of his

9   employment and claims CFF's investigation was inadequate (citing, for example, its

10  failure to contact JoAnne Williams to verify her donor intent and its alleged refusal to

11  permit Plaintiff "to tell his side of the story"), the fact remains that Plaintiff was an at-will

12  employee, and CFF claims it lost faith in his ability to continue serving as Executive

13  Director given the inconsistent and misleading information he provided during the audit.

14       As an at-will employee, Plaintiff could be terminated at any time and for any

15  reason, so long as those reasons were not for the present purposes discriminatory in

16  nature.  See, e.g., Silo v. CHW Med. Found, 27 Cal. 4th 1097,1104 (2002) (under

17  California law an employee can terminate an at-will employee for no reason or for an

18  arbitrary or irrational reason).  Consequently, even if CFF "overreacted" to the Audit

19  Report or otherwise acted in an arbitrary fashion in discharging Plaintiff, it could legally

20  do so unless its termination was motivated by a discriminatory purpose, which Plaintiff

21  alleges here is age discrimination.

22       To that end, the Court is left only with Plaintiff's allegation that he was replaced by

23  a younger employee.  Any inference from that fact alone is compromised at the onset by

24  the fact that Plaintiff was 51 years old at the time he was hired by CFF as Executive

25  Director.  In any event, without more the Court finds the fact that Plaintiff was replaced

26  by a younger person, without any other evidence corroborating age discrimination, to be

27  insufficient to meet his burden in showing that CFF's stated reasons for his discharge

28  were pretextual.  Plaintiff must produce evidence sufficient as a matter of law to support

1  a finding of intentional age discrimination in order to show pretext, and he has not done

2  so here.  See Guz v. Bechtel, supra, 24 Cal. 4th at 356-57.  As indicated above,

3  evidence too weak to support a rational inference of discriminatory intent cannot suffice

4  in that regard.  Id. at 369-70.  Because Plaintiff has not met the requisite burden,

5  summary judgment as to his age discrimination claim is proper and Defendant's Motion

6  is GRANTED as to the Second Cause of Action.

7        **B.     Third Cause of Action:  Wrongful Termination**

8        Plaintiff concedes that his Third Cause of Action, which claims he was wrongfully

9  terminated in violation of public policy, is based on the viability of his age discrimination

10  claim.  Pl.'s Opp., 18:5-9.  Given that his age discrimination claim fails, this claim thus

11  necessarily fails as well.  Defendant's Motion is accordingly also GRANTED as to the

12  Third Cause of Action.

13        **C.     First Cause of Action:  Defamation**

14        Having determined that Plaintiff's two causes of action premised on age

15  discrimination do not survive summary judgment, the only remaining question for the

16  Court's consideration is whether statements made by CFF's management concerning his

17  termination constitute actionable defamation.  The Court concludes they do not.

18        In contending that CFF's internal communications about Plaintiff's termination

19  were not defamatory, CFF makes two arguments.  First, it claims that because the

20  statements were true, they cannot give rise to a claim for defamation.  Second, Plaintiff

21  alleges that the statements are subject to a conditional privilege under California law in

22  any event because, having been made internally to other CFF management employees

23  without malice, they were communicated to persons with a "common interest" in the

24  subject matter at issue.  Cal. Civ. Code § 47(c); London v. Sears, Roebuck & Co.,

25  619 F. Supp. 2d 854, 864-65 (N.D. Cal. 2009); Noel v. River Hills Wilsons, Inc.,

26  113 Cal. App. 4th 1363, 1369 (2003).  Employees have a privilege to communicate

27  concerns about employees to other employees within the employer's organization, and

28  such communications are presumptively privileged.  Bierbower v FHP, Inc.,

1  70 Cal. App. 4th 1, 2 (1999).  The presumption of privilege applies so long as the

2  statements at issue are made without malice.  The malice necessary to overcome the

3  qualified privilege created by California Civil Code § 47(c) is "actual malice," which

4  depends on a showing that allegedly defamatory communications are motivated by

5  hatred or ill-will towards the plaintiff, or by a showing that the employer lacked

6  reasonable grounds to believe the communications were true and therefore acted in

7  conscious disregard of the truth.  Taus v. Loftus, 40 Cal. 4th 683, 721 (2007).

8        All the statements Plaintiff identifies as being defamatory were made internally by

9  and between CFF employees concerning the reasons for Plaintiff's termination and his

10  conduct during the audit in the context of discussing how to respond either to Plaintiff's

11  own request for a further explanation as to why he was terminated, or in connection with

12  inquiries made by members of the public as to why Plaintiff had been discharged.  As

13  such, they are subject to qualified privilege attaching to such communications unless

14  Plaintiff can show that the CFF employees made the statements with actual malice.

15  Again, Plaintiff cannot meet that burden.

16        The statements in question all stemmed from the findings of Defendant's Audit

17  Report which expressly found that Plaintiff had provided false and misleading information

18  to the auditors in connection with their work.  Relying on the auditor's findings in that

19  regard gives rise to no inference of malice on the part of CFF's management personnel.

20  In addition, the individuals who made the statements have all submitted declarations

21  denying that they acted with any malice whatsoever.  Anne Harris, Plaintiff's immediate

22  supervisor, denied harboring any ill-will toward Plaintiff, stating that she in fact advocated

23  for a lesser form of discipline despite ultimately being overruled in that regard by Ginsky.

24  Decl. of Anne Harris, ECF No. 12-4, ¶ 8.  Ginsky, for his part, does not recall even

25  meeting Plaintiff previously and also denied any malice, stating that as the chief steward

26  for CFF's operations he felt that engaging in communications with other management

27  about Plaintiff's termination was simply part of his job duties.  Ginsky Decl., ¶ 9.  Finally,

28  Chief Compliance Officer Eleana Seek claims she made the comments she did in good

1  faith and as part of her job duties in responding to COO Ginsky's inquiries.  She denies

2  any malice in doing so.  Seek Decl., ¶ 10.

3       Aside from generalities that malice should be inferred simply given the nature of

4  the statements made, Plaintiff offers no evidence to suggest that the statement he

5  claimed defamed him were made maliciously.  As such, he has failed to show any actual

6  malice sufficient to defeat the qualified privilege attaching to the internal communications

7  between management that he alleges were defamatory.  Since the statements are

8  protected on that basis alone, whether or not they were also true (as alternatively argued

9  by CFF) need not be considered.  Defendant's request for summary judgment as to the

10  First Cause of Action is also GRANTED.

11

12                                    **CONCLUSION**

13

14       Based on all the foregoing, the Court concludes that Defendant CFF is entitled to

15  judgment as a matter of law.  Consequently, Defendant's Motion for Summary Judgment

16  (ECF No. 12) is GRANTED and the Clerk of Court is directed to enter judgment in CFF's

17  favor.[4]

18       IT IS SO ORDERED.

19  Dated:  August 28, 2020

20

21                                    MORRISON C. ENGLAND, JR.
                                      SENIOR UNITED STATES DISTRICT JUDGE
22

23

24       [4] The Court recognizes that in addition to the case-in-chief, CFF filed a Cross-Complaint against
     Plaintiff in state court on December 5, 2017, prior to Defendant's removal herein.  CFF's Cross-Complaint
25   alleges that Plaintiff interfered with its prospective economic advantage with donors in the wake of his
     termination and defamed CFF in so doing.  On September 6, 2019, Plaintiff filed a Motion for Summary
26   Judgment as to CFF's Cross-Complaint concurrently with CFF's own Motion as discussed in this
     Memorandum and Order.  Defendant's Opposition to Plaintiff's Motion, however, states unequivocally that
27   in the event CFF's Motion for Summary Judgment is granted, as the Court does here, it "hereby agrees to
     dismiss its Cross-Complaint.'  Def.'s Opp. ECF No. 16, 3:15-16.  Consequently, Plaintiff's Motion (ECF
     No. 11) is DENIED as moot and the Cross-Complaint is dismissed such that the entire case is now
28   concluded.